# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Joshua Staples, | Civ. No. 18-3449 (DSD/BRT) |
| Plaintiff, | |
| v. | **REPORT AND** |
| Kathy Halvorson and Tom Roy, | **RECOMMENDATION** |
| Defendants. | |

Joshua Staples, 44517 Fleming Logging Road, Hinckley, MN 55037, *pro se* Plaintiff.

Alemayehu Z. Ditamo, Esq., Rachel E. Bell-Munger, Esq., Minnesota Attorney General's Office, counsel for Defendants.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on a Motion for Judgment on the Pleadings and for Summary Judgment filed by Defendants Kathy Halvorson and Tom Roy ("Defendants"). (Doc. No. 31.) For the reasons stated below, this Court recommends that Defendants' Motion for Judgment on the Pleadings be granted.

## I.   Plaintiff's Allegations

*Pro se* Plaintiff Joshua Staples filed this lawsuit on December 21, 2018. (Doc. No. 1, Compl.) At the time he filed his Complaint, Plaintiff was a prisoner at MCF-Faribault, Defendant Halvorson was the Warden of MCF-Faribault, and Defendant Roy was the Commissioner of the Minnesota Department of Corrections.

In his Complaint, Plaintiff—who identifies himself as the Pipe Carrier for MCF-Faribault's Native American Community—alleges that Defendant Halvorson suspended Native American Sweat/Pipe and Drums Services at MCF-Faribault for over thirty days arbitrarily, and in so doing imposed a discriminatory substantial burden on the Native American community's free-exercise rights. (*Id.* at 4–6.) Plaintiff also alleges that Defendant Roy issued a memorandum on November 6, 2017, making changes to the Native American Feast Meals, and that those changes were similarly discriminatory. (*Id.* at 5.) Plaintiff attached records of his attempts to grieve his complaints via "kites" and a Grievance Report beginning on March 3, 2018, as exhibits to his Complaint. (*See* Doc. No. 1-1, Compl. Exs. 5–31.) Ultimately, Plaintiff seeks an order from the Court directing the Minnesota Department of Corrections to put in place procedural mechanisms designed to protect Native Americans against such arbitrary and discriminatory acts, and damages in the amount of $5,000. (Compl. 6; Doc. No. 1-2, Civ. Cover Sheet.) In an Addendum filed March 21, 2019, Plaintiff clarified that he is suing Defendants in their official—not individual—capacities. (*See* Doc. No. 15, Addendum.)

On April 22, 2019, Plaintiff notified the Court that he would be leaving MCF-Faribault on supervised release but intended to continue to litigate the present matter. On July 24, 2019, Defendants filed their Motion for Judgment on the Pleadings and for Summary Judgment. (Doc. No. 31, Mot. For J. on the Pleadings and for Summ. J.) Despite a briefing order issued by this Court on July 29, 2019, directing Plaintiff to respond to Defendants' motion by August 23, 2019, Plaintiff failed to do so, and Defendants filed a Notice of No Reply on September 6, 2019. (*See* Doc. No. 37, Notice.)

2

On November 22, 2019, Defendants notified the Court that Plaintiff had been reincarcerated at MCF-Lino Lakes. (Doc. No. 39, Letter.)

### II. Analysis

#### A. Standard of Review

After pleadings are closed, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). A Rule 12(c) motion may assert the defense of failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(h)(2). The standard used by courts when deciding a Rule 12(c) motion for judgment on the pleadings is identical to that used in deciding a 12(b)(6) motion to dismiss. *Saterdalen v. Spencer*, 725 F.3d 838, 840–41 (8th Cir. 2013) (citation omitted).

When analyzing whether dismissal is warranted under Rule 12(b)(6) for failure to state a claim, a court generally must limit its inquiry to the pleadings, though "it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). A court must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor; however, it need not accept "mere conclusory statements," including legal conclusions couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014); *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010).

To withstand dismissal under Rule 12(b)(6), a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### B.  Plaintiff's Claim for Monetary Damages Should be Dismissed

Plaintiff sued Defendants—both employees of the State of Minnesota—in their official capacities. (*See* Addendum.) A § 1983 action brought against a government official in his or her official capacity is treated as a suit against the agency or entity that employs that person. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). Thus, official capacity claims brought against employees of a state are considered to be actions against the state itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citation omitted).

Because official-capacity claims against state officials are treated as claims against the state itself, such actions are therefore subject to the limitations imposed by the Eleventh Amendment. Under the Eleventh Amendment, states are immune from claims brought against them in federal court unless the state has waived its immunity or the state's immunity has been overridden by Congress. *Will*, 491 U.S. at 66. "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment Immunity." *Id.* An exception exists for official capacity suits for prospective relief. *See Hopkins v.*

*Saunders*, 199 F.3d 968, 977 (8th Cir. 1999) (stating the "Eleventh Amendment protects a state official sued in his official capacity from all claims except for certain forms of prospective equitable relief"), *cert denied*, 531 U.S. 873 (2000). But where, as here, the Plaintiff seeks monetary damages under § 1983 against state officials in their official capacities, such a claim "is barred under the Eleventh Amendment." *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999).

Therefore, because Plaintiff's claim for monetary damages is barred by the Eleventh Amendment, this Court recommends that it be dismissed.

### C.  Plaintiff's Remaining § 1983 Claims Against Defendant Halvorson Should Be Dismissed as Moot

Federal courts have an independent obligation to inquire into their jurisdiction whenever it appears to be lacking. *See Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990). "Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies." *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000). "When, during the course of litigation, the issues presented in a case lose their life . . . and a federal court can no longer grant effective relief, the case is considered moot." *Id.* (internal quotations omitted). The question, then, is whether Plaintiff's release from MCF-Faribault effectively moots his present claims for relief.

To state a claim under § 1983, a plaintiff must plead that a government official has personally violated that plaintiff's constitutional rights. *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (citing *Iqbal*, 556 U.S. at 676). As discussed above, the Eleventh Amendment bars § 1983 claims for damages against state officials in their official

capacities for damages, but it "does not bar official-capacity claims for injunctive relief against state officials." *Andrus*, 197 F.3d at 955. Here, Plaintiff alleged that Defendants' actions were arbitrary, discriminatory, and burdened Plaintiff's free-exercise rights. (Compl. 4–6.) Plaintiff sought injunctive relief in the form of an order from the Court directing the Minnesota Department of Corrections to put in place "legal mechanisms" to guard against such events in the future. (*Id.* at 6.)

Claims for equitable relief are moot "absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). As a consequence, "a prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted). Here, Defendant Halvorson is the Warden of MCF-Faribault. But Plaintiff is no longer an inmate at MCF-Faribault; he is incarcerated at MCF-Lino Lakes. (*See* Letter.) Accordingly, Plaintiff can no longer demonstrate that there is any real or immediate threat that he will be wronged by Defendant Halvorson again, and his claims for injunctive relief against her are therefore moot.

It should be noted that Plaintiff's Complaint speaks repeatedly about the "Native American community" at MCF-Faribault. To the extent that Plaintiff's claims allege the mistreatment of *other* prisoners by Defendant Halvorson, those claims should also be dismissed. "A prisoner cannot bring claims on behalf of other prisoners" because he or she "must allege a personal loss." *Martin*, 780 F.2d 1337 (citing *Miner v. Brackney*, 719

6

F.2d 954, 956 (8th Cir. 1983) (per curiam), *cert. denied*, 467 U.S. 1259 (1984); *Carter v. Romines*, 560 F.2d 395, 395 (8th Cir. 1977) (per curiam), *cert. denied*, 436 U.S. 948 (1978)). Put simply, Plaintiff lacks standing to bring such a third-party claim.

### D. Plaintiff Failed to Exhaust his Administrative Remedies

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). This is because the purpose of the PLRA is to reduce the quantity of prisoner lawsuits by giving prison administration an opportunity to take corrective action in response to a prisoner's grievance, thereby avoiding the need for court intercession. *Id.* at 524–25. Prisoners must exhaust administrative remedies even where the relief sought, such as monetary damages, cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). When a plaintiff fails to exhaust the administrative remedies available to him before filing a lawsuit, "dismissal is mandatory." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

In *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016), the Court clarified that there are no "judge-made" exceptions, such as good cause, to the PLRA's exhaustion requirement. Instead, a prisoner must exhaust all "available" remedies, which the Court narrowly defined as all remedies that are "capable of use." *Id.* at 1858. The Court then emphasized

7

that administrative remedies are "unavailable" only under three limited circumstances which "will not often arise": (1) when the process cannot be completed because it is a "dead end," with prison officials "unable or consistently unwilling" to provide any relief; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) when prison officials thwart the inmate through "machination, misrepresentation, or intimidation." *Id.* at 1859–60.

The DOC has a policy in place concerning prisoner grievances in its facilities. (Doc. No. 22, Ebeling Aff. ¶ 2; *see* Doc. No. 22-1, Grievance Procedure.) Generally, the DOC requires prisoners to send "kites" (intra-prison written communications) to those responsible for the issue and—if the prisoner is still dissatisfied with the response or lack thereof—to continue sending kites up the chain of command, before filing a grievance. (Ebeling Aff. ¶ 3.) If a prisoner has exhausted the relevant chain of command and wishes to pursue his complaint further, he must file a facility grievance using the formal grievance form within 30 days of the last occurrence of the issue being grieved. (Ebeling Aff. ¶ 3; Grievance Procedure 2–3.) In those cases where the grievance concerns religious programming, it is decided by the facility's warden (or designee). (Doc. No. 23, Moravec Aff. ¶ 4.) If a prisoner wishes to appeal that decision, he must file a grievance appeal within 21 days of the facility's decision to be decided either by the Deputy Commissioner of the DOC's Facility Services Division (or a designee). (*Id.*) The DOC's decision on appeal is considered the DOC's final response. (*Id.*)

Here, Plaintiff did not follow the proper grievance process with regard to either the suspension of the Native American Sweat/Pipe and Drums Services or the changes to the

Native American Feast Meals. Plaintiff did send kites to the staff in the relevant chain of command, but he then sent a kite dated October 20, 2018, to the MCF-Faribault Warden instead of filing a formal facility grievance as was required. (Ebeling Aff. ¶ 6; Moravec Aff. ¶ 6; Doc. No. 23-1, 10/20/18 Kite 8–12.) Next, Plaintiff sent a grievance form and letter dated October 28, 108, to the DOC Central Office. (Doc. No. 22-1, 10/28/18 Grievance 18–21.) This was returned to Plaintiff because he had not yet filed a facility grievance. (Ebeling Aff. ¶ 6; Doc. No. 22-1, 11/08/18 Letter 17.) Finally, on December 4, 2018, Plaintiff filed a facility grievance. (Moravec Aff. ¶ 6; Doc. No. 23-1, 12/04/18 Grievance 6–7.) Plaintiff's facility grievance was denied, and he did not subsequently file an appeal. (*See* Doc. No. 23-1, 12/10/18 Grievance Report 4–5; Ebeling Aff. ¶ 6; Moravec Aff. ¶ 6.)

The DOC grievance policy establishes that inmates must (1) present their grievance up the chain of command if they are unsatisfied with the response, (2) file a facility grievance, and (3) file a grievance appeal with DOC's Central Office. (Ebeling Aff. ¶¶ 3–4 ; Moravec Aff. ¶¶ 3–4.) Plaintiff asserts in his Complaint that he followed the required grievance process and attaches documents he believes support that claim. (Compl. 3; Doc. No. 1-1, Pl.'s Exs.) But Plaintiff's attachments do not include any evidence that he filed the required appeal to DOC's Central Office. In sum, it is undisputed that Plaintiff did not escalate his grievance to the final step in the DOC process by appealing it to DOC's Central Office, and Plaintiff does not argue that any of the limited circumstances outlined in *Ross* apply. *See Ross*, 136 S. Ct. at 1859–60. There is no fact issue as to whether Plaintiff could have obtained relief at that step, and the

9

administrative remedy established by the Grievance Procedure remained available to Plaintiff. In light of these facts, this Court concludes that Plaintiff failed to exhaust his administrative remedies and recommends that his Complaint be dismissed. *See Johnson*, 340 F.3d at 627.

### III.     Recommendation

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion for Judgment on the Pleadings (**Doc. No. 31**) be **GRANTED**.

2. Plaintiff's Complaint (**Doc. No. 1**) be **DISMISSED**.

Date: December 18, 2019.                  *s/ Becky R. Thorson*_____
                                           BECKY R. THORSON
                                           United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).